**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

**GODFREY UNAKA,**

Plaintiff,

**v.**

**EQUIFAX INFORMATION SERVICES LLC,**

Defendant.

Civil Action No.: ___________________

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## I. INTRODUCTION

1. This is an action for actual damages, statutory damages, punitive damages, and costs brought by Plaintiff Godfrey Unaka ("Plaintiff") against Defendant Equifax Information

Services LLC ("Equifax" or "Defendant") for willful and negligent violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"). Pro se complaints are to be liberally construed and held to less stringent standards than pleadings drafted by attorneys. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

2. Equifax is a consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f), which assembles and evaluates consumer credit information and furnishes consumer reports to third parties for credit, employment, insurance, and other purposes. Equifax issued Plaintiff a consumer file disclosure dated May 27, 2026 ("the Report").

3. The Report that Equifax furnished to Plaintiff contains over 180 blank and missing data fields across multiple accounts — including complete omissions of Actual Payment Amount data, Scheduled Payment Amount data, and entire 24-Month History tables — rendering Plaintiff's file disclosure materially incomplete and preventing Plaintiff from determining the accuracy of the information reported. This constitutes a violation of 15 U.S.C. § 1681g(a)(1), which requires Equifax to clearly and accurately disclose to a consumer all information in the consumer's file.

4. In addition to incomplete disclosure, the Report contains a per se inaccuracy on the Merrick Bank account, wherein the reported balance of $743.00 exceeds the stated credit limit of $500.00 — a mathematical impossibility that Equifax's own data systems failed to detect and correct. This constitutes a violation of 15 U.S.C. § 1681e(b)'s requirement that Equifax follow reasonable procedures to assure maximum possible accuracy.

5. Furthermore, the Report contains materially misleading reporting including an internal data conflict on the Wells Fargo Auto account and systemic static placeholder date entries on multiple accounts. With respect to the Verizon Wireless collection account (ending 0001), Narrative Code 166 — Consumer Disputes This Account — has been present since at least March 2026, yet Equifax has failed to conduct a reasonable reinvestigation, failed to delete or modify unverifiable information, and failed to note the disputed status in subsequent third-party disclosures. Plaintiff seeks judgment against Equifax for all available damages under the FCRA.

## II. JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over this action pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331, because this action arises under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq., a federal statute.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in the Commonwealth of Massachusetts and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Massachusetts, including Plaintiff's receipt of the materially incomplete and inaccurate consumer file disclosure at issue.

## III. PARTIES

8. Plaintiff Godfrey Unaka is a natural person residing in the Commonwealth of Massachusetts. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

9. Defendant Equifax Information Services LLC is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) and is regularly engaged in the business of assembling, evaluating, and furnishing consumer reports to third parties throughout the United States, including in the Commonwealth of Massachusetts. Equifax may be served through its registered agent.

## IV. FACTUAL ALLEGATIONS

### A. Overview of Consumer File Disclosure

10. On or about May 27, 2026, Plaintiff requested and received a consumer file disclosure from Equifax ("the Report"). The Report reflects accounts reported by multiple furnishers and is the consumer file maintained by Equifax for Plaintiff as of the report date.

11. The Report contains at least nine (9) accounts including, but not limited to: Merrick Bank (account ending 1822); Kikoff Lending, LLC (account ending 3A7V); Austin Capital

Bank (account ending 8606); Wells Fargo Auto Credit Bureau Operation (account ending 8677); Sunrise Banks C/O Self Financial, Inc. (account ending 1986); Chimefin/Stride Bank (account ending 4806); Verizon Wireless (account ending 0001); Esusu / WinnResidential (account ending 1581); and a second Esusu / WinnResidential account (account ending 1395).

12. Equifax confirmed that the Report has been disseminated to third parties, as evidenced by hard inquiries reflected within the Report. Each such dissemination constitutes a transmission of Plaintiff's consumer file containing the incomplete, inaccurate, and misleading information described herein.

**B. Section 1681g(a)(1) — Incomplete File Disclosure: Account-by-Account Inventory**

13. Section 1681g(a)(1) of the FCRA requires every consumer reporting agency to "clearly and accurately disclose to the consumer" "all information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The Federal Trade Commission confirmed in its Advisory Opinion to Darcy (June 30, 2000) that a CRA's file disclosure must contain every field of information that the CRA maintains and provides to third parties; a CRA that withholds data from the consumer's own disclosure while providing that data to commercial purchasers violates § 1681g(a)(1). An Equifax file disclosure is deficient if it is "unclear such that the consumer cannot determine the accuracy of the information." Alexander v. Equifax Info. Servs., LLC, 2018 WL 3025939 (D. Nev. 2018).

14. The Report Equifax provided to Plaintiff contains in excess of 180 blank, missing, and data-deficient fields across multiple accounts, as itemized below.

15. Merrick Bank (account ending 1822): This account has been the subject of 24 months of reporting history as reflected in the 24-Month History table. For each of the 24 reported months — spanning from May 2025 through April 2026 — the Scheduled Payment Amount field is blank and the Actual Payment Amount field is blank, representing at minimum 48 missing data fields on this account alone. Additionally, the Last Payment Date field is frozen at the identical static value of 09/26/2021 across all 24 rows. The identical static date copied uniformly across 24 consecutive reporting periods — including periods years after the date itself — cannot reflect actual payment event data for each respective month and therefore constitutes a systemic placeholder entry, not a genuine data disclosure. The total deficient data fields on the Merrick Bank account are in excess of 72.

16. Wells Fargo Auto Credit Bureau Operation (account ending 8677): This account reflects 99 Months Reviewed — over eight (8) years of account history. The account was opened October 8, 2016, and closed November 2021. Despite 99 months of history, the 24-Month History table for this account is entirely blank — containing zero data rows. Equifax has provided not a single month of balance, payment, or status data in the consumer disclosure for this account, even though such data plainly exists and was furnished to commercial third parties during the same reporting periods. The complete absence of a 24-Month History table for a 99-month account constitutes a material

omission under § 1681g(a)(1). Furthermore, the Payment Details section reflects a Scheduled Payment Amount of $0 alongside an Actual Payment Amount of $2,330.00 for the same account — two data fields on the same entry that cannot simultaneously be accurate. The total deficient data fields on the Wells Fargo Auto account are in excess of 50.

17. Sunrise Banks C/O Self Financial, Inc. (account ending 1986): The 24-Month History table for this account is entirely blank — containing zero data rows. The account was opened May 30, 2024 and closed July 2024, with an Actual Payment Amount of $511.00 reflected in Payment Details. Despite one month of reviewed history and a documented payment event, no historical data is reflected in the consumer's file disclosure.

18. Chimefin/Stride Bank (account ending 4806): This account reflects 39 Months Reviewed. The 24-Month History table contains 24 rows spanning May 2025 through April 2026. For each of the 24 reported months, the Scheduled Payment Amount field is blank, representing at minimum 24 missing data fields on this account. Additionally, the Last Payment Date field is frozen at the identical static value of 09/02/2025 across 7 consecutive rows spanning October 2025 through April 2026 — months during which actual monthly payment events would be expected to reflect distinct dates. The identical static date uniformly applied across multiple reporting periods constitutes a systemic placeholder, not genuine per-month data. The total deficient data fields on the Chimefin/Stride Bank account are in excess of 31.

19. Verizon Wireless (account ending 0001): This account reflects 19 Months Reviewed. The 24-Month History table contains 19 rows. For each of the 19 reported rows, the Scheduled Payment Amount field is blank, the Actual Payment Amount field is blank, and the Last Payment Date field is blank — representing in excess of 57 missing data fields on this account alone. The account carries a balance of $3,904.00 and a past due amount of $3,904.00 across all reported periods, yet no payment event data of any kind is disclosed in the consumer's file.

20. Austin Capital Bank (account ending 8606): In the 24-Month History row for February 2026 (02/26), the Actual Payment Amount field is blank while the account's balance is reported as $1,008.00, representing one missing data field.

21. Esusu / WinnResidential (account ending 1581): The 24-Month History table contains only one (1) row, showing blank Scheduled Payment Amount and Actual Payment Amount fields, representing two missing data fields. The single row entry is deficient for an account with 6 Months Reviewed.

22. The aggregate number of blank, missing, and static-placeholder-deficient data fields across the accounts described in paragraphs 15 through 21 is in excess of 180 individual fields. The uniformity of the pattern — blank Actual Payment Amount fields, blank Scheduled Payment Amount fields, identical static Last Payment Dates copied across multiple months — confirms that these omissions are not the result of isolated data error but instead reflect Equifax's deliberate system policy of withholding categories of

consumer file data from Plaintiff's own disclosure while maintaining and transmitting that data to commercial subscribers.

**C. Per Se Inaccuracy — Balance Exceeds Credit Limit**

23. The Report reflects that the Merrick Bank account (ending 1822) carries a current balance of $743.00 against a stated credit limit of $500.00. The reported balance exceeds the stated credit limit by $243.00. Under any standard interpretation of credit reporting, a revolving account balance cannot legitimately exceed the credit limit as reported without triggering a data-integrity flag. A balance that exceeds the credit limit is a per se inaccuracy under 15 U.S.C. § 1681e(b) because no reasonable procedure for assuring maximum possible accuracy would permit publication of a balance that exceeds the account's own credit limit without verification or notation. See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009).

24. The absence of a basic automated data-integrity check comparing the current balance field to the credit limit field on the same account entry — a check that any minimally compliant data quality system would perform — is objectively unreasonable under the standard articulated in Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69 (2007), and subjects Equifax to willfulness liability.

**D. Materially Misleading Reporting**

25. In addition to the per se inaccuracy described above, the Report contains materially misleading data entries that violate 15 U.S.C. § 1681e(b)'s requirement to assure maximum possible accuracy. Technically accurate data may nonetheless constitute an inaccuracy under § 1681e(b) when the information is presented in a manner that is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions. Gorman v. Wolpoff & Abramson, LLP, 584 F.3d at 1163.

26. Wells Fargo Auto Credit Bureau Operation (account ending 8677) — Internal Field Conflict: As set forth in paragraph 16, the Payment Details section of this account simultaneously reflects a Scheduled Payment Amount of $0.00 and an Actual Payment Amount of $2,330.00. These two fields appear within the same account data entry and pertain to the same reporting period. Both fields cannot simultaneously be accurate for the same account and reporting period. The presence of two mutually contradictory data values within a single account entry — $0 scheduled against $2,330 actual — is materially misleading to any third-party reviewer and constitutes an inaccuracy under § 1681e(b).

27. Chimefin/Stride Bank (account ending 4806) — Static Date Pattern: As set forth in paragraph 18, the Last Payment Date of 09/02/2025 appears identically in every row from October 2025 through April 2026 — seven consecutive monthly reporting periods covering months that each occurred after the date itself. A single static date propagated unchanged across seven months of monthly reporting cannot reflect actual per-month payment event data. Any third-party reviewer accessing this account information would

be misled into believing that no payment activity occurred during any of those seven months, or that the payment data for those months is accurate, when in fact the uniform static date signals a data population failure. This reporting is materially misleading under § 1681e(b). See also Macik v. JP Morgan Chase Bank, N.A., 2015 WL 12999728 (S.D. Tex. 2015).

**E. Third-Party Dissemination and Article III Standing**

28. As confirmed by the hard inquiry records reflected in the Report, Equifax has transmitted Plaintiff's consumer file — containing the inaccuracies, omissions, and misleading information described herein — to third-party commercial subscribers on multiple occasions during the reporting period. Each such transmission constitutes a dissemination of Plaintiff's consumer report containing the deficiencies described in this Complaint.

29. Each transmission of an inaccurate or incomplete consumer report to a third party constitutes a concrete, particularized injury sufficient to establish Article III standing. TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2208-09 (2021). Plaintiff's injury is not hypothetical or speculative; Equifax's own hard inquiry records confirm that Plaintiff's file, containing the specific deficiencies enumerated herein, was accessed by and transmitted to third-party entities.

30. Each separate third-party transmission of a report containing willful FCRA violations constitutes a separate violation for purposes of statutory damages under 15 U.S.C. §

1681n(a)(1)(A), which provides for statutory damages of not less than $100 and not more than $1,000 per willful violation.

**F. Dispute History — Verizon Wireless Account**

31. The 24-Month History table for the Verizon Wireless account (ending 0001) reflects Narrative Code 166 — Consumer Disputes This Account — in the reporting periods for March 2026 (03/26) and April 2026 (04/26). Code 166 confirms that Plaintiff has disputed the accuracy of the Verizon Wireless account with Equifax and that the dispute remains active and unresolved as of the Report date.

32. Upon receipt of a consumer dispute, 15 U.S.C. § 1681i(a)(1)(A) requires Equifax to conduct a free reinvestigation of the disputed information within thirty (30) days to determine whether the disputed information is inaccurate and to record the current status of the disputed information. The Verizon Wireless account (ending 0001) continues to report a balance of $3,904.00 as past due, a collection account status, and derogatory notations, without deletion, modification, or verified accuracy.

33. The presence of Code 166 in March and April 2026 confirms that Equifax received and registered Plaintiff's dispute and was on notice of its obligation to reinvestigate no later than the date on which the dispute was registered. Equifax's failure to resolve the dispute as of the Report date of May 27, 2026 constitutes a failure to conduct a reasonable reinvestigation within the statutory period under § 1681i(a)(1)(A).

34. Section 1681i(a)(5)(A) requires that, if after reinvestigation the disputed item of information cannot be verified, Equifax must promptly delete or modify that item. Equifax has not deleted or modified the Verizon Wireless account entry notwithstanding the active dispute reflected on the face of the Report.

35. Section 1681i(c) requires that any item of information disputed by a consumer and not removed from the consumer's file must include in subsequent consumer reports a notation that the item is disputed by the consumer. The Report confirms that the Verizon Wireless account carries Narrative Code 166 in March and April 2026, yet Equifax has transmitted this account's information to third parties in reporting periods where no dispute notation was included — specifically, in the months of May 2025 through February 2026 reflected in the 24-Month History table, during which no Code 166 notation appears — suggesting that Equifax transmitted Plaintiff's disputed account information to third parties without noting the dispute. Brady v. Credit Recovery Co., 160 F.3d 64, 67 (1st Cir. 1998) (failure to note disputed status violates consumer protection statutes).

**G. Systemic Reinvestigation Failure**

36. A consumer reporting agency may not simply rubber-stamp a furnisher's response to a consumer dispute. Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997). A CRA's reinvestigation of a disputed item must be reasonable, which requires more than

merely forwarding the dispute to the furnisher and relaying the furnisher's response. Ghazaryan v. Equifax Info. Servs., LLC, 740 F. App'x 157, 158 (9th Cir. 2018).

37. With respect to the Verizon Wireless account (ending 0001), Equifax has failed to conduct a reasonable reinvestigation of the information in dispute. The account continues to reflect a balance of $3,904.00 as entirely past due, a collection account designation, and over 19 months of derogatory reporting history, without any modification, deletion, or verified substantiation of the disputed data.

**H. Willfulness**

38. Equifax's violations of the FCRA as described herein are willful within the meaning of 15 U.S.C. § 1681n. An action is willful under the FCRA when it is taken in "reckless disregard" of the consumer's rights — meaning the defendant's conduct was objectively unreasonable and created a risk of harm substantially greater than mere negligence. Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 57-70 (2007).

39. FTC Notice — § 1681g(a)(1): The Federal Trade Commission's Advisory Opinion to Darcy (June 30, 2000) placed all consumer reporting agencies, including Equifax, on notice over twenty-five (25) years ago that withholding field-level data from a consumer's own file disclosure while providing that data to third-party commercial subscribers violates § 1681g(a)(1). Equifax's continued operation of data systems that blank Actual Payment Amount, Scheduled Payment Amount, and Last Payment Date

fields on consumer disclosures — while those same fields are populated in reports provided to commercial subscribers — is objectively unreasonable in light of this decades-old regulatory notice and constitutes willful disregard of known legal obligations under Safeco, 551 U.S. at 69.

40. Systemic Uniform Pattern: The identical pattern of blank Actual Payment Amount fields, blank Scheduled Payment Amount fields, and identical static Last Payment Date entries appearing across multiple unrelated accounts on the same consumer disclosure — accounts from different furnishers in different industries over different time periods — confirms that these omissions result from Equifax's deliberate system-level data processing policy, not from random data error specific to any individual account. Courts distinguish deliberate systemic omissions from isolated errors in assessing willfulness under Safeco. The uniformity of the pattern is direct evidence that Equifax has made a knowing decision to withhold categories of consumer file data.

41. Balance vs. Credit Limit: The absence of an automated data-integrity check that compares the balance field to the credit limit field on the same account record — a check that any competent data management system would perform — is objectively unreasonable. Equifax's failure to catch and correct a balance that exceeds its own account's credit limit by $243.00 before publishing the report to Plaintiff and to third parties reflects reckless disregard for accuracy under Safeco.

42. Punitive damages are appropriate where, as here, a CRA engages in systemic willful violations that reflect a pattern of conduct. Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735, 745 (11th Cir. 2020).

**I. Actual Damages**

43. As a direct and proximate result of Equifax's willful and negligent violations of the FCRA, Plaintiff has suffered actual damages including but not limited to: (a) denial or restriction of credit opportunities on terms to which Plaintiff would otherwise be entitled based on an accurate and complete consumer file; (b) payment of higher interest rates and less favorable credit terms attributable to the inaccurate and incomplete consumer file; (c) loss of time, including hours spent reviewing, analyzing, and seeking to correct the deficient consumer file disclosure; (d) emotional distress, frustration, anxiety, and humiliation arising from Plaintiff's discovery of the extent to which Equifax has withheld, misrepresented, and failed to correct Plaintiff's consumer file data; and (e) harm to creditworthiness and credit profile resulting from continued third-party dissemination of inaccurate and misleading account information.

## V. CAUSES OF ACTION

### COUNT I

### VIOLATION OF 15 U.S.C. § 1681g(a)(1)

### INCOMPLETE CONSUMER FILE DISCLOSURE

44. Plaintiff incorporates by reference paragraphs 1 through 43 as if fully set forth herein.

45. Section 1681g(a)(1) of the FCRA requires every consumer reporting agency to "clearly and accurately disclose to the consumer" "all information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

46. Equifax violated 15 U.S.C. § 1681g(a)(1) by providing Plaintiff a consumer file disclosure on May 27, 2026 that omitted in excess of 180 data fields across at least seven (7) accounts, including: (a) blank Actual Payment Amount fields in all 24 reported rows of the Merrick Bank account (ending 1822); (b) blank Scheduled Payment Amount fields in all 24 reported rows of the Merrick Bank account; (c) a static placeholder Last Payment Date of 09/26/2021 copied uniformly across all 24 rows of the Merrick Bank account; (d) a completely absent 24-Month History table for the Wells Fargo Auto Credit Bureau Operation account (ending 8677) despite 99 Months Reviewed; (e) a completely absent 24-Month History table for the Sunrise Banks C/O Self Financial, Inc. account (ending 1986); (f) blank Scheduled Payment Amount fields in all 24 reported rows of the Chimefin/Stride Bank account (ending 4806); (g) a static placeholder Last Payment Date of 09/02/2025 copied uniformly across 7 consecutive rows of the Chimefin/Stride Bank account; (h) blank Scheduled Payment Amount, Actual Payment Amount, and Last Payment Date fields in all 19 reported rows of the Verizon Wireless account (ending 0001), totaling in excess of 57 missing fields on that account alone; and (i) additional

blank Actual Payment Amount and Scheduled Payment Amount fields on the Austin Capital Bank (ending 8606) and Esusu / WinnResidential (ending 1581) accounts.

47. Because of these omissions, Plaintiff is unable to determine the accuracy of the derogatory and negative payment history information reported on these accounts. The disclosure is unclear within the meaning of Alexander v. Equifax Info. Servs., LLC, 2018 WL 3025939 (D. Nev. 2018), and fails to convey "all information" as required by § 1681g(a)(1) and the FTC Advisory Opinion to Darcy (June 30, 2000).

48. Equifax's violations of § 1681g(a)(1) as described herein are willful within the meaning of 15 U.S.C. § 1681n because the pattern of identical blank fields and static placeholder dates across multiple unrelated accounts confirms a deliberate system-level data omission policy, and because Equifax had actual notice of the legal requirement to provide complete field-level data since no later than the FTC Advisory Opinion to Darcy in 2000. Alternatively, Equifax acted negligently under 15 U.S.C. § 1681o.

49. As a direct and proximate result of Equifax's violations of § 1681g(a)(1), Plaintiff has suffered actual damages as set forth in paragraph 43, and is entitled to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

## COUNT II

## VIOLATION OF 15 U.S.C. § 1681e(b)

## PER SE INACCURACY — BALANCE EXCEEDS CREDIT LIMIT

50. Plaintiff incorporates by reference paragraphs 1 through 43 as if fully set forth herein.

51. Section 1681e(b) of the FCRA requires that whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b).

52. Equifax violated 15 U.S.C. § 1681e(b) by preparing, maintaining, and disseminating a consumer report for Plaintiff that reflects the Merrick Bank revolving credit card account (ending 1822) as carrying a current balance of $743.00 against a stated credit limit of $500.00 — a reported balance that exceeds the account's own credit limit by $243.00. A revolving credit account balance exceeding the reported credit limit is a per se inaccuracy because it is internally inconsistent within the same account record and cannot be accurate as simultaneously reported. See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009).

53. Equifax's failure to maintain a data-integrity procedure that detects and flags account records where the reported balance exceeds the reported credit limit — before such records are published to the consumer and transmitted to third-party subscribers — is objectively unreasonable and constitutes a willful failure to follow reasonable procedures under Safeco, 551 U.S. at 69. The dissemination of this per se inaccuracy to third parties

constitutes one or more separate violations of § 1681e(b), each warranting statutory damages under 15 U.S.C. § 1681n(a)(1)(A).

54. As a direct and proximate result of Equifax's violation of § 1681e(b), Plaintiff has suffered actual damages as set forth in paragraph 43, and is entitled to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

**COUNT III**

**VIOLATION OF 15 U.S.C. § 1681e(b)**

**MATERIALLY MISLEADING REPORTING**

55. Plaintiff incorporates by reference paragraphs 1 through 43 as if fully set forth herein.

56. Equifax violated 15 U.S.C. § 1681e(b) by maintaining and disseminating materially misleading information that, while arguably traceable to submitted furnisher data, is presented in a manner misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions concerning Plaintiff. Gorman v. Wolpoff & Abramson, LLP, 584 F.3d at 1163.

57. Wells Fargo Auto Credit Bureau Operation (account ending 8677): The Payment Details section of this account simultaneously reflects a Scheduled Payment Amount of $0.00 and an Actual Payment Amount of $2,330.00. These two fields occupy the same account entry and purport to describe the same account's payment characteristics. No accurate

account record can reflect both a $0.00 scheduled payment and a $2,330.00 actual payment as consistent descriptions of the same account. This internal contradiction on the face of the same account entry is materially misleading to any third-party reviewer who accesses Plaintiff's consumer report and is an inaccuracy under § 1681e(b).

58. Chimefin/Stride Bank (account ending 4806): The Last Payment Date of 09/02/2025 appears identically in the Last Payment Date column for every row from October 2025 through April 2026 — seven (7) consecutive monthly reporting periods. Each of those months postdates September 2, 2025, the static date itself. A single date that does not change across seven months of monthly data is not a record of actual monthly payment events; it is a static placeholder that misrepresents the completeness and accuracy of the per-month data to any third-party reviewer. This reporting is materially misleading under § 1681e(b). Macik v. JP Morgan Chase Bank, N.A., 2015 WL 12999728 (S.D. Tex. 2015).

59. Equifax's violations of § 1681e(b) as described in this Count are willful under Safeco because the static date pattern appearing across multiple accounts is the product of a deliberate system-level data policy, not isolated error, and because the Wells Fargo internal field conflict is a data contradiction detectable by any basic record-level validation check. Alternatively, Equifax acted negligently under 15 U.S.C. § 1681o.

60. As a direct and proximate result of Equifax's violations, Plaintiff has suffered actual damages as set forth in paragraph 43, and is entitled to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

## COUNT IV

## VIOLATION OF 15 U.S.C. § 1681i(a)(1)(A)

## FAILURE TO CONDUCT REASONABLE REINVESTIGATION

61. Plaintiff incorporates by reference paragraphs 1 through 43 as if fully set forth herein.

62. Section 1681i(a)(1)(A) of the FCRA provides that if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item, before the end of the 30-day period beginning on the date on which the agency receives the notice of dispute from the consumer. 15 U.S.C. § 1681i(a)(1)(A).

63. As confirmed by Narrative Code 166 — Consumer Disputes This Account — appearing in the 24-Month History table of the Verizon Wireless account (ending 0001) for the reporting periods of March 2026 (03/26) and April 2026 (04/26), Plaintiff disputed the accuracy of the Verizon Wireless account with Equifax, and Equifax received and recorded that dispute.

64. Notwithstanding Plaintiff's dispute, as of the Report date of May 27, 2026, the Verizon Wireless account (ending 0001) continues to reflect a balance of $3,904.00 reported as entirely past due, a collection account status, derogatory payment history notations, and a Date of First Delinquency of September 20, 2024 — without deletion, modification, or verified current status reflecting a reasonable reinvestigation. Equifax has failed to conduct a reasonable reinvestigation of the Verizon Wireless account within the statutory 30-day period following receipt of Plaintiff's dispute, in violation of § 1681i(a)(1)(A). A CRA's reinvestigation must consist of more than forwarding a dispute to the furnisher and accepting the furnisher's response without independent inquiry. Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997); Ghazaryan v. Equifax Info. Servs., LLC, 740 F. App'x 157, 158 (9th Cir. 2018).

65. As a direct and proximate result of Equifax's violation of § 1681i(a)(1)(A), Plaintiff has suffered actual damages as set forth in paragraph 43, and is entitled to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

## COUNT V

## VIOLATION OF 15 U.S.C. § 1681i(a)(5)(A)

## FAILURE TO DELETE OR MODIFY UNVERIFIABLE INFORMATION

66. Plaintiff incorporates by reference paragraphs 1 through 43 as if fully set forth herein.

67. Section 1681i(a)(5)(A) of the FCRA provides that if, after any reinvestigation of information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate. 15 U.S.C. § 1681i(a)(5)(A).

68. As set forth above, Plaintiff disputed the accuracy of the Verizon Wireless account (ending 0001) and Equifax received that dispute, as confirmed by the presence of Narrative Code 166 in the March 2026 and April 2026 reporting periods. As of the Report date of May 27, 2026, the disputed information — including the $3,904.00 balance, the collection account status, the past due amount of $3,904.00, and the associated derogatory notations — remains unmodified and undeleted in Plaintiff's consumer file.

69. Equifax's failure to delete or modify the disputed Verizon Wireless account information following completion or expiration of its reinvestigation obligation violates § 1681i(a)(5)(A) if the information cannot be verified. Equifax's maintenance of this information in the consumer file without deletion or modification constitutes a continuing violation.

70. As a direct and proximate result of Equifax's violation of § 1681i(a)(5)(A), Plaintiff has suffered actual damages as set forth in paragraph 43, and is entitled to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

## COUNT VI

## VIOLATION OF 15 U.S.C. § 1681i(c)

## FAILURE TO NOTE DISPUTED STATUS IN THIRD-PARTY REPORTS

71. Plaintiff incorporates by reference paragraphs 1 through 43 as if fully set forth herein.

72. Section 1681i(c) of the FCRA provides that whenever a statement of a dispute is filed, a notation of the dispute shall be provided by the consumer reporting agency in subsequent consumer reports containing the information in question. 15 U.S.C. § 1681i(c).

73. Narrative Code 166 — Consumer Disputes This Account — appears on the Verizon Wireless account (ending 0001) for reporting periods March 2026 (03/26) and April 2026 (04/26), confirming that Equifax had notice of Plaintiff's dispute of this account as of at least March 2026. However, for the reporting periods prior to March 2026 reflected in the 24-Month History table — including May 2025 through February 2026, a period of ten (10) months — no dispute notation of any kind appears on the Verizon Wireless account. This establishes that Equifax transmitted Plaintiff's consumer file to third parties during those periods, disseminating the Verizon Wireless derogatory account information without any notation that the account was disputed.

74. Equifax's failure to include a dispute notation on subsequent consumer reports transmitted to third parties, as required by § 1681i(c), constitutes a violation of the FCRA. Brady v. Credit Recovery Co., 160 F.3d 64, 67 (1st Cir. 1998).

75. As a direct and proximate result of Equifax's violation of § 1681i(c), Plaintiff has suffered actual damages as set forth in paragraph 43, and is entitled to statutory damages, punitive damages, and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Godfrey Unaka respectfully prays for judgment against Defendant Equifax Information Services LLC as follows:

76. (a) Judgment in favor of Plaintiff and against Defendant on all counts;

77. (b) Actual damages in an amount to be determined at trial, pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1), including compensation for lost credit opportunities, higher interest rates, emotional distress, and time expended as a result of Defendant's violations;

78. (c) Statutory damages of not less than $100.00 and not more than $1,000.00 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), with each third-party dissemination of Plaintiff's consumer file containing the inaccuracies, omissions, and misleading information described herein constituting a separate willful violation;

79. (d) Punitive damages in an amount to be determined by the jury, for Defendant's willful violations of the FCRA, pursuant to 15 U.S.C. § 1681n(a)(2), in light of the systemic, deliberate, and uniform nature of Defendant's data omission policy and its dissemination of inaccurate consumer reports;

80. (e) Costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

81. (f) Injunctive relief directing Defendant to provide Plaintiff with a complete, corrected consumer file disclosure that contains all information maintained in Plaintiff's consumer file, including all payment history data fields, without static placeholder entries or blanks, and to correct all inaccurate account information identified herein; and

82. (g) Such other and further relief as this Court deems just and proper.

83. Plaintiff reserves the right to amend this Complaint pursuant to FRCP Rule 15(a) to add reinvestigation counts under 15 U.S.C. § 1681i following expiration of the CRA's 30-day reinvestigation window.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Godfrey Unaka hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**Godfrey Unaka**

Pro Se Plaintiff

Address: 116 E Howard st. apt. 231, Quincy, MA 02169

Email: juniorunaka@gmail.com

Dated: ____6/4/26______________________